True and Certified Copy of the Original
Sent for Recordation

After Recording Return To:
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

Prepared By:
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 03.8C.1.468

_____[Space Above This Line For Recording Data]_____

Loan No.: ___3495
Investor Loan No.

FHA Case No.

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 14th day of February, 2023, between KENNETH J MOSS and NINNETTE E MOSS, HUSBAND AND WIFE, whose address is 6212 PARK PLACE, TOBYHANNA, Pennsylvania 18466 ("Borrower") and Lakeview Loan Servicing, LLC by its attorney-in-fact M&T Bank, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated April 15th, 2016, recorded April 25th, 2016, and recorded in Book/Liber 2470, Page 3857, Instrument No. 201609300, of the Official Records of MONROE County, Pennsylvania, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 6212 PARK PLACE, TOBYHANNA, Pennsylvania 18466,

Original Loan Amount: $171,830.00

Loan No.         495

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

    In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1.    As of March 1st, 2023, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $159,511.03, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

    2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from February 1st, 2023. Borrower promises to make monthly payments of principal and interest of U.S. $666.66, beginning on the 1st day of March, 2023, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on February 1st, 2063, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

    3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument,

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

Loan No ˉˉ ᣟ3495

  (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

  (b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

  5.  Borrower understands and agrees that:

  (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

  (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

  (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

  (d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

  (e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

  (f)  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

  Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

  By checking this box, Borrower also consents to being contacted by text messaging☐.

  6.  If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

  7.  Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay

PENNSYLVANIA LOAN MODIFICATION AGREEMENT  Page 3 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Case 5:22-bk-01239-MJC  Doc 43  Filed 05/02/23  Entered 05/02/23 15:07:41  Desc
Main Document  Page 3 of 8

Loan No.: 3495

directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No.: ( 3495

___03-24-2023___  
Date

___03/24/23___  
Date

_____  
Date

_____  
Date

_____ (Seal)  
KENNETH J MOSS — Borrower

_____ (Seal)  
NINNETTE E MOSS, signing solely to — Borrower  
acknowledge this Agreement, but not to incur  
any personal liability for the debt

_____ (Seal)  
— Borrower

_____ (Seal)  
— Borrower

## BORROWER ACKNOWLEDGMENT

State of ___Pennsylvania___  
County of ___Monroe___ §§

On this, the ___24___ day of ___March 2023___ before me ___Tiffany L. Green___, the undersigned officer, personally appeared KENNETH J MOSS and NINNETTE E MOSS

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

Commonwealth of Pennsylvania - Notary Seal  
Tiffany L. Green, Notary Public  
Monroe County  
My commission expires June 7, 2023  
Commission number 1350217  
Member, Pennsylvania Association of Notaries

___Tiffany L Green___  
Notary Signature

___Notary Public___  
Title of Officer

My Commission Expires: ___06/07/2023___

ACKNOWLEDGMENT (PENNSYLVANIA)  Page 5 of 6

Loan No.: 3495

M&T Bank as attorney-in-fact for
Lakeview Loan Servicing, LLC      –Lender

3/28/2023      -Date

By: _____
Dominic Germano
Assistant Vice President
Its: _____

## LENDER ACKNOWLEDGMENT

State of   New York     §
                        §
County of Erie          §

On this, the __28__ day of __March__, __2023__ before me __Charles Sperrazza__, the undersigned officer, personally appeared __Dominic Germano__ who acknowledged himself/herself to be the __Assistant Vice President__ _____ of M&T Bank as attorney-in-fact for Lakeview Loan Servicing, LLC a entity, and that he/she as such __Assistant Vice President__ _____ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as __Assistant Vice President__ _____.

In witness whereof, I hereunto set my hand and official seal.

(Seal)
CHARLES SPERRAZZA
NOTARY PUBLIC STATE OF NEW YORK
ERIE COUNTY
LIC. #01SP6410631
COMM. EXP. 10/26/2024

Notary Signature _____

Notary Public
Title of Officer
My Commission Expires: _____

"I, __Dominic Germano__, do hereby certify that the correct address of the within named Mortgagee is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146. Witness my hand this __28th__ day of __March__, __2023__."

Signed: _____
By: _____
Dominic Germano
Assistant Vice President

ACKNOWLEDGMENT (PENNSYLVANIA)                                        Page 6 of 6

Loan No. \_\_3495

### EXHIBIT "B"

The Security Instrument executed by KENNETH J MOSS AND NINNETTE E. MOSS in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR MOVEMENT MORTGAGE, LLC in the original principal sum of $171,830.00, dated April 15th, 2016, recorded on April 25th, 2016, in Liber or Book 2470, Page 3857, Instrument No. 201609300, of the Official Records of MONROE County, Pennsylvania.

The Security Instrument was previously modified by a Loan Modification Agreement dated October 3rd, 2019, recorded on October 23rd, 2019, in Liber or Book 2537, Page 9796, Instrument No. 201926209, of the Official Records of MONROE County/Parish, Pennsylvania.

The Security Instrument was assigned as follows:
From Mortgage Electronic Registration Systems, Inc., as nominee for Movement Mortgage, LLC, to Lakeview Loan Servicing, LLC, by assignment dated February 4th, 2019, and recorded on February 21st, 2019 of the Official Records of MONROE County, State of Pennsylvania in Book/Liber 2524, Page 6753, Instrument No. 201903903.

From N/A to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of MONROE County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

From N/A, to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of MONROE County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

EXHIBIT "B"

EXHIBIT "A"

ALL THAT CERTAIN lot, parcel or piece of land situate in the Township of Coolbaugh, County of Monroe, and Commonwealth of Pennsylvania, being Lot No. 117, Section F, A Pocono Country Place, as shown on a plan of lots recorded in the Office of the Recorder of Deeds, in and for the County of Monroe, in Plot Book Volume/Page 19, Page 11, 13, and 15.

TAX ID. NO.: 3/8C/1/466

EXHIBIT "A"